Dravosburg Land Company et al., Appellants, *v.* Scott et al., Appellants.

Argued October 30, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*R. T. M. McCready,* with him *Ernest Frey,* for appellants, No. 196, and for appellees, No. 199.

*Howard D. Montgomery,* for appellees, No. 196 and for appellants, No. 199.

OPINION BY MR. JUSTICE STERN, November 25, 1940:

Plaintiff, Dravosburg Land Company, is a Pennsylvania corporation. In 1937, it owned two tracts of farm land, one of which was sixty-five acres in extent. Defendant, Howard M. Scott, is one of four directors of the company, and he and the estate of his deceased wife hold one-fourth of its stock. Contiguous to the company's 65-acre tract was a one-acre lot owned by defendant on which was erected the home where he and his family had resided for many years.

The Carnegie-Illinois Steel Corporation, in connection with the proposed erection of one of its plants in the vicinity, began negotiations for the purchase of the company's sixty-five acres and defendant's one acre, its purpose being to construct a gas main over these tracts. The negotiations were conducted by defendant on his own behalf, and by him and the president of plaintiff company on behalf of the latter, and culminated in the Steel Corporation stating that it would pay $75,000 for the properties, but that it could not utilize the one without the other and would buy only both or neither, leaving it to plaintiff and defendant to agree between

themselves on the apportionment of the purchase money. According to a finding made by the learned chancellor the market value of the company's tract was at least four times as great as that of defendant's land, but defendant refused to accept less than $40,000 for his property. A special meeting of the stockholders was held, at which practically all the stock was represented, and a violent, protracted discussion ensued, the other stockholders asserting that defendant was asking an exorbitant price and one out of all proportion to that which the company would be obliged to accept if the deal were consummated. However, in view of the fact that, despite strenuous efforts over a period of twenty-five years, the company had been unable to develop or sell the land to advantage, and also because the price now obtainable was much greater than that being paid for other properties in the neighborhood, the stockholders preferred to accept $35,000 rather than lose the sale entirely. They were familiar with all the details of the negotiations with the Steel Corporation and defendant's participation therein, and, acting with full knowledge of the facts, they unanimously passed a resolution authorizing and directing the president and secretary of the company to enter into a contract with the Steel Corporation to sell it the sixty-five acres for $35,000 and to execute a deed. At a meeting of the Board of Directors this action was unanimously approved and like authority given. The transaction was accordingly consummated, and, on the same day, defendant deeded his land to the Steel Corporation and received from it the sum of $40,000.

The present bill in equity, brought by the Land Company against Scott, asked that the latter be required to account for and pay over such part of the $40,000 received by him as might be found by the court to have been in excess of his "due, fair and reasonable proportion" of the aggregate purchase money of $75,000, plaintiff's theory being that defendant had been unjustly enriched by the amount of that excess. The court held that

the company was not entitled to any restitution from defendant and refused relief.

Neither precedent nor logic supports plaintiff's claim. While defendant may have taken harsh and selfish advantage of the circumstances which placed him in a strategic position,—although obviously the company enjoyed an equally strategic position against him,—he was not precluded, merely because of his being a stockholder and director of the company, from demanding whatever price he might see fit for the sale of his own property. He was not forced to accept less for his in order that the company might obtain more for theirs. No duty to the company restricted his right to refuse to sell his land, or, if he sold it at all, to do so only at a price satisfactory to himself. No law, outside of the realm of eminent domain, compels a person to part with his property for what other persons, or a court, may regard as sufficient compensation. In the debate concerning the division of the $75,000 purchase money defendant was not acting on behalf of the company, but openly, and at arm's length, to serve his own interest; he was not buying from the company or selling to it, but both were dealing with the Steel Corporation for their joint and several advantage. There was no concealment of facts. Neither as a director nor stockholder did he control, or could he control, the transaction as far as the sale of the company's land was concerned. If it felt disinclined to accept $35,000 for its tract, it was not coerced or obliged to sell; since, however, it preferred to take that amount rather than lose the deal altogether, it cannot now ask a court to make defendant accept a price for which he was unwilling to sell his property.

In his answer to the bill in equity defendant set forth new matter, and asked for affirmative relief against plaintiff. He alleged that the 65-acre and other tract of land the titles to which were in the company were not really owned by it but were held under an implied or resulting trust for the benefit of himself and his

deceased wife, and he asked for an accounting of the moneys acquired from the sale of the land to the Steel Corporation, and of all funds in the company's treasury arising from previous sales or obtained from other sources, and for a conveyance of the remaining land to which the company still had title. The court held that he was not entitled to the relief sought.

It appears that in 1912 defendant owned a 75-acre tract (of which the sixty-five acres previously referred to were a part) and his wife owned a tract of 192 acres; these lands were subject to a defaulted mortgage and delinquent taxes amounting in all to approximately $15,000. He sought the assistance of counsel, a firm of two brothers who had represented him in other transactions, and they succeeded in obtaining a new mortgage loan in that amount. A written agreement was entered into between him, his wife, and one Garrison, the prospective mortgagee, which provided for the formation of a limited partnership to which the land was to be conveyed, the stock of the partnership to be distributed one-fourth to defendant and his wife and three-fourths to Garrison or his nominees. The partnership was to attempt from time to time to sell parts or all of the property, and meanwhile defendant was to remain in possession of the land for farming purposes without the payment of any rent, taxes or other charges. At the same time it was arranged that defendant's counsel should receive one-half of the total stock from Garrison; * they and Garrison agreed to provide such additional funds as might be required from time to time to develop and handle the land, and counsel agreed also to render all necessary legal services without further charge. In 1916 plaintiff company was organized and the land was conveyed to it by the limited partnership. For twenty-five years counsel devoted considerable time and effort to

---

* Apparently counsel surrendered some of their stock to Garrison when plaintiff company was subsequently formed, so that thereafter they held only 37½% of the company's stock.

obtaining the best possible return from the property, entering into numerous negotiations for its development, for sales of portions of it and rights of way over it, and for leases of the remnants of coal which underlay it. In 1917, in addition to other moneys advanced by them in that and previous years, they were obliged to help refinance the mortgage on the property by investing their own funds for that purpose.

It is defendant's contention that it was orally agreed by counsel and Garrison in 1912 that the conveyance of the property to the limited partnership was intended merely to give additional protection to Garrison's mortgage, and that immediately upon the discharge of that indebtedness all the property then remaining would be reconveyed to defendant and his wife. The chancellor found, on adequate evidence, that no such agreement existed. Parenthetically, it may be remarked that the mortgage was paid off in 1920, but defendant did not advance his present claim that he and his wife were entitled to a reconveyance of the property until at least fifteen years thereafter. Defendant contends that even in the absence of an express agreement the court should have declared the existence of a trust resulting from the confidential relationship between defendant and his counsel which the latter abused by appropriating to themselves so large a share of the equity of the land over and above the mortgage indebtedness. While, at first blush, it does seem unconscionable that defendant and his wife should have been obliged to surrender a three-fourths interest in the property as compensation for obtaining the mortgage loan, a closer analysis of the facts indicates that the chancellor was justified in finding, as he did, that there was no fraud, overreaching or abuse of confidence, but that the transaction was "in every way fair and profitable to the Scotts and consistent with the highest degree of good faith on the part of the attorneys involved." In 1912 it was doubtful whether there was any equity whatever in the land; even

twenty-three years thereafter, in 1935, defendant made an offer to purchase all of it from the company for $3,000 with the assumption of about $2,000 of then delinquent taxes, and the company was willing to accept that offer but defendant could not raise the money at the time. During the course of a quarter of a century heroic efforts were made to develop the land to advantage but with such meagre success that scarcely more revenue was obtained from the property than was required to carry and pay off the fixed charges thereon. Counsel, by their efforts in 1912 and their funds in 1917, prevented foreclosures which would have completely deprived defendant and his wife of their ownership. For a quarter of a century, as already stated, defendant was in possession of the surface of the land without the payment of rent or taxes. Any reasonable fee charged by counsel for their original services and for their continued legal and business activities in connection with the property during the twenty-five year period would no doubt have been little less than that which they ultimately realized from the unexpected windfall of the purchase of the land by the Steel Corporation. In any event, this court is precluded, on appeal, from overriding the findings of fact of the chancellor approved by the court in banc, when, as here, there is evidence to support them. Those findings are conclusive of the issue raised by defendant.

The decree is affirmed; costs to be divided equally between plaintiff Dravosburg Land Company and defendant Howard M. Scott.